UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-7065 PA (MRWx) | Date | August 1, 2024 |
|---|---|---|---|
| Title | Nancy Fiedler, et al. v. United States of America | | |

| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Gabby Garcia | Not Reported | N/A |
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:** IN CHAMBERS – COURT ORDER

Before the Court is a Motion to Dismiss filed by defendant United States ("Defendant" or the "Government") (Docket No. 88). The Government seeks to dismiss the First Amended Complaint filed by the personal representatives of the 34 people who tragically died as a result of a fire aboard the vessel *Conception* on September 2, 2019, while it was moored in the waters off Santa Cruz Island. The personal representatives, plus one of the surviving crew members ("Plaintiffs"), assert claims against the Government for wrongful death, survival damages, and personal injury under the Suits in Admiralty Act ("SIAA"), 46 U.S.C. § 30901, arising out of the United States Coast Guard's role in inspecting and certifying the *Conception*. The Government, pursuant to Federal Rule of Civil Procedure 12(b)(1), asserts that this Court lacks subject matter jurisdiction over Plaintiffs' claims because the "discretionary function exception" to the Government's waiver of sovereign immunity applies and deprives the Court of jurisdiction. Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds this matter is appropriate for decision without oral argument.

## I. Factual and Procedural Background

Plaintiffs allege that the United States Coast Guard was negligent by "[i]gnoring, disregarding, and failing to abide the procedures, protocols, and checklists" applicable to the vessel and "[c]ertificating and authorizing *Conception* to operate as a 'small passenger vessel' within the meaning of 46 C.F.R. § 175.110(a) . . . even though her electrical wiring and systems, her fire detection and suppression systems, her passenger-accommodation escape hatch, her watch logs and training logs were in open and obvious violation of those procedures, protocols, and checklists." (1st Am. Compl. ¶ 132.) In the briefing on the Motion, Plaintiffs also claim that the Coast Guard's inspectors should have identified flammable trash cans and furniture as violations of the applicable regulations.

On February 13, 2019, about seven months before the fire, *Conception* underwent an annual (spot check) inspection and hull exam performed by Coast Guard Chief Warrant Officer

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-7065 PA (MRWx) | Date | August 1, 2024 |
|---|---|---|---|
| Title | Nancy Fiedler, et al. v. United States of America | | |

Daniel Hager, while the vessel was in dry dock. The second day of the inspection was on March 1, 2019, when Mr. Hager visited the vessel while it was moored in Santa Barbara Harbor and he completed a check ride. Following the inspection, Mr. Hager endorsed the Certificate of Inspection ("COI") allowing *Conception* to continue operating, having determined the vessel to be reasonably safe and that, "[i]n [his] opinion, the vessel is fit for route and service as specified on the current COI." Neither during that inspection, nor those that preceded it, did the Coast Guard's inspectors identify the plastic trash cans and furnishings as safety hazards. Nor did the inspectors require the vessel's owners to repair or replace the vessel's wiring or other systems that Plaintiffs believe contributed to the 34 deaths on *Conception*.

After the Court allowed limited discovery on the jurisdictional issue presented by the Government's assertion of the discretionary function exception, and then stayed and continued the action multiple times because of the criminal prosecution of *Conception's* captain, the parties filed a Stipulation and "Joint Administrative Motion" setting a briefing schedule for the Government to file a Motion to Dismiss "pursuant to Fed. R. Civ. P. 12(b)(1) instead of a motion for summary judgment on September 29, 2023. (Docket No. 80.) The Court issued an Order granting the Joint Administrative Motion on October 2, 2023. (Docket No. 82.) As a result of the parties' Stipulation and the Court's Order, the Court rejects Plaintiffs' arguments asserting that the Government's filing of a Motion to Dismiss rather than a Motion for Summary Judgment is procedurally improper or in violation of the Court's Orders.

In their Opposition, Plaintiffs also seek, pursuant to Federal Rule of Civil Procedure 56(d), a continuance to obtain additional information through discovery. Federal Rule of Civil Procedure 56(d) grants courts the discretion to extend a response deadline where "the nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Accordingly, to meet its burden under Rule 56(d), the non-moving party must show: "(1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) that the facts sought exist; and (3) that the sought-after facts are essential to oppose summary judgment." Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp., 525 F.3d 822, 827 (9th Cir. 2008). An extension is not justified merely because discovery is incomplete or desired facts are unavailable. See Jensen v. Redev. Agency of Sandy City, 998 F.2d 1550, 1554 (10th Cir. 1993). Rather, "the party filing the affidavit must show how additional time will enable him to rebut the movant's allegations of no genuine issue of fact." Id. "[T]he party seeking a continuance bears the burden to show what specific facts it hopes to discover that will raise an issue of material fact." Continental Maritime v. Pacific Coast Metal Trades, 817 F.2d 1391, 1395 (9th Cir. 1987). "The burden is on the party seeking additional discovery to proffer sufficient facts to show that the evidence sought exists, and that it would prevent summary judgment." Chance v. Pac-Tel. Teletrac, Inc., 242 F.3d 1151, 1161 n.6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-7065 PA (MRWx) | Date | August 1, 2024 |
|---|---|---|---|
| Title | Nancy Fiedler, et al. v. United States of America | | |

(9th Cir. 2001). None of the additional discovery or evidence identified by Plaintiffs would alter the Courts application of the discretionary function exception. The Court therefore denies Plaintiffs' Rule 56(d) request.

**II.    Legal Standards**

   **A.    Motion to Dismiss for Lack of Jurisdiction**

Federal courts are courts of limited jurisdiction, possessing "only that power authorized by Constitution and statute." Kokkonen v. Guardian Life Insurance Company of America, 511 U.S. 375, 377, 114 S. Ct. 1673, 128 L. Ed.2d 391 (1994). "It is presumed that a cause lies outside this limited jurisdiction . . ., and the burden of establishing the contrary rests upon the party asserting jurisdiction." Id. (citations omitted). A challenge to subject matter jurisdiction is properly decided under Federal Rule of Civil Procedure 12(b)(1), and may be asserted as either a facial or factual challenge. White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000). "The district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." Leite v. Crane Co., 749 F.3d 1117, 1121 (9th Cir. 2014).

When considering factual attacks on jurisdiction, like the Government's Motion to Dismiss in this action, the Court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). "The court need not presume the truthfulness of the plaintiff's allegations." Id. "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." Savage v. Glendale Union High Sch., 343 F.3d 1036, 1039 n. 2 (9th Cir.2003). Courts should refrain from resolving factual issues where "the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits." Augustine v. United States, 704 F.2d 1074, 1077 (9th Cir. 1983); see also Safe Air, 373 F. 3d at 1039; Williston Basin Interstate Pipeline Co. v. An Exclusive Gas Storage Leasehold & Easement, 524 F. 3d 1090, 1094 (9th Cir. 2008) ("As a general rule, when 'the question of jurisdiction and the merits of the action are intertwined,' dismissal for lack of subject matter jurisdiction is improper.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-7065 PA (MRWx) | Date | August 1, 2024 |
|---|---|---|---|
| Title | Nancy Fiedler, et al. v. United States of America | | |

**B.      Discretionary Function Exception**

The Government contends that the discretionary function exception applies to deprive the Court of jurisdiction over Plaintiffs' claims.  The Federal Tort Claims Act ("FTCA") waives the government's sovereign immunity and confers subject matter jurisdiction on the federal district courts when federal employees are negligent under circumstances where the United States, if it were a private party, would be liable under the law of the place where the tortious act or omission occurred.  28 U.S.C. § 1346(b).  The waiver of sovereign immunity under the FTCA is subject to exceptions that include the discretionary function exception.  Gen. Dynamics Corp. v. U.S., 139 F.3d 1280, 1283 (9th Cir. 1998).  "If an exception applies, sovereign immunity is not waived, and no subject matter jurisdiction exists."  Id.  The Ninth Circuit has concluded that the discretionary function exception "applies to the SIAA as well as to the FTCA."  Earles v. United States, 935 F.2d 1028, 1032 (9th Cir. 1991).

The discretionary function exception precludes tort liability for:

> Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise of performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a).

The Supreme Court has created a two-part test for applying the discretionary function exception.  See Berkovitz by Berkovitz v. United States, 486 U.S. 531, 536, 108 S. Ct. 1954, 1958, 100 L. Ed. 2d 531 (1988).  First, "'it is the nature of the conduct, rather than the status of the actor, that governs whether the discretionary function applies in a given case.'"  Id. (quoting United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 813, 104 S. Ct. 2755, 2764, 81 L. Ed. 2d 660 (1984)).  The Supreme Court in Berkovitz explained further:

> In examining the nature of the challenged conduct, a court must first consider whether the action is a matter of choice for the acting employee.  This inquiry is mandated by the language of the exception; conduct cannot be discretionary unless it involves an

Case 2:21-cv-07065-PA-MRW   Document 110   Filed 08/01/24   Page 5 of 9   Page ID #:1969

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-7065 PA (MRWx) | Date | August 1, 2024 |
|---|---|---|---|
| Title | Nancy Fiedler, et al. v. United States of America | | |

> element of judgment or choice. Thus, the discretionary function exception will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow. In this event, the employee has no rightful option but to adhere to the directive. And if the employee's conduct cannot appropriately be the product of judgment or choice, then there is no discretion in the conduct for the discretionary function exception to protect.

486 U.S. at 536, 108 S. Ct. at 1958-59; see also United States v. Gaubert, 499 U.S. 315, 322-23, 111 S. Ct. 1267, 1273-74, 113 L. Ed. 2d 335 (1991).

Second, assuming the conduct in question involves an element of judgment, the court must determine whether that judgment is of the kind that the discretionary function was designed to protect: governmental actions and decisions based on considerations of public policy. See Berkovitz, 486 U.S. at 536-37, 198 S. Ct. at 1959. "In sum, the discretionary function exception insulates the Government from liability if the action challenged in the case involves the permissible exercise of policy judgment." Id. at 537, 198 S. Ct. at 1959. In creating the discretionary function exception, Congress "wished to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort. By fashioning an exception for discretionary governmental functions, including regulatory activities, Congress took 'steps to protect the Government from liability that would seriously handicap efficient government operations.'" United States v. S.A. Empresa de Viacao Aerea Rio Grandense ("Varig Airlines"), 467 U.S. 797, 814, 104 S. Ct. 2755, 2765, 81 L. Ed. 2d 660 (1984) (quoting United States v. Muniz, 374 U.S. 150, 163, 83 S. Ct. 1850, 1858, 10 L. Ed. 2d 805 (1963)).

As the Ninth Circuit has explained, the exception does not apply "when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." Navarette v. United States, 500 F.3d 914, 918-19 (9th Cir. 2007). However, "[w]hen a statute or regulation allows a federal employee to act with discretion, 'it must be presumed that the agency's acts are grounded in policy when exercising that discretion.'" GATX/Airlog Co. v. U.S., 286 F.3d 1168, 1174 (9th Cir. 2002) (citation omitted). "The relevant question is not whether an explicit balancing is proved, but whether the decision is susceptible to policy analysis." Kennewick Irrigation Dist. v. U.S., 880 F.2d 1018, 1028 (9th Cir. 1989); Bailey v. U.S., 623 F.3d 855, 861, 863 (9th Cir. 2010) ("Moreover, so long as a decision involves even two competing interests, it is 'susceptible' to policy analysis . . . ."). More recently, the Ninth Circuit has clarified that "whether the discretion involved was abused makes no difference; the government will still prevail. This means that even if the employee's discretionary act is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-7065 PA (MRWx) | Date | August 1, 2024 |
|---|---|---|---|
| Title | Nancy Fiedler, et al. v. United States of America | | |

negligent, the district court should dismiss plaintiff's case." Lam v. United States, 979 F.3d 665, 673 (9th Cir. 2020).

**III.    Analysis**

As more fully explained in the Government's Motion and Reply, the applicable statutes, regulations, and policies governing the Coast Guard's inspection of passenger vessels vest both the Coast Guard and the individual inspectors with the type of discretion that satisfies the Supreme Court's two-part test for application of the discretionary function exception.  For instance, Congress instructed the Coast Guard and those in charge of marine inspections to "consistently interpret regulations and standards . . . to avoid disruption and undue expense to industry."  46 U.S.C. § 3305(d)(1).  Indeed, the Marine Safety Manual, which provides guidance for those tasked with inspecting vessels, states that it "should be used as a guide" "without undue hampering of independent action and judgment by marine safety personnel" and encourages inspectors to use their own judgment by explaining that the Manual is "no substitute for experience and sound judgment to ensure that good marine practice is being followed."  (Exhibit A to Perrygo Decl.)

Similarly, the Manual explains that the applicable regulations "require a realistic appraisal of the operational needs" of the maritime industry and that because it "is impractical to try to develop regulations that cover all situations," those responsible for inspections "are authorized to accept alternates or equivalents and to grant departures from the regulations when circumstances so warrant."  Id.  According to the Manual, the "inspector has great latitude in the scope of these inspections, which is based on his or her evaluation of the vessel's overall condition."  Id.  The Manual also states that the "inspector should vary the degree of attention they give to individual items as circumstances require."  Id.  Consistent with these admonitions, the Manual provides:

> The Coast Guard's objective is to administer vessel inspection laws and regulations promote safe, well-equipped vessels that are suitable for their intended service.  It is not the Coast Guard's intent to place unnecessary economic and operational burdens upon the maritime industry.  When determining inspection requirements and procedures, inspection personnel must recognize and give due consideration to the following factors:
> a.     That the burden for proposing acceptable repairs rests upon the vessel's owner, not upon the repair facility or the inspector.
> b.     That delays to vessels, which can be costly, need to be balanced against the risks imposed by continued operation of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-7065 PA (MRWx) | Date | August 1, 2024 |
|---|---|---|---|
| Title | Nancy Fiedler, et al. v. United States of America | | |

          the vessel, with safety of life, property, and the environment always the predominant factors rather than economics.

    c.    That certain types of construction, equipment, and/or repairs are more economically advantageous to the vessel operator and can provide the same measure of safety.

    d.    That some repairs can be safely delayed and can be more economically accomplished at a different place and time.

    e.    That the overall safety of a vessel and its operating conditions, such as route, hours of operations, and type of operation, should be considered in determining inspection requirements.

    f.    That vessels are sometimes subject to the operational requirements of organizations and agencies other than the Coast Guard.

    g.    That a balance must be maintained between the requirements of safety and practical operation. Arbitrary decisions or actions that contribute little to the vessel's safety must be avoided.

Id.

        Contrary to Plaintiffs' mischaracterizations of the applicable regulations as imposing mandatory obligations on inspectors, the relevant regulations actually impose obligations on vessel owners and grant to the Coast Guard and its inspectors considerable discretion when conducting vessel inspections. Plaintiffs' Opposition, for instance, wrongly asserts that 46 C.F.R. § 175.806(a) "placed Hagar and his fellow [inspectors] under a mandatory duty to inspect 'all electrical cable as far as practicable." The regulation, however, provides: "At each initial and subsequent inspection for certification of a vessel, the owner or managing operator shall be prepared to conduct tests and have the vessel ready for inspection of electrical equipment and systems . . . ." 46 C.F.R. § 175.806(a) (emphasis added). Indeed, to reinforce the inspector's discretion, another provision of that same regulation states that "[n]othing in this subpart limits the marine inspector from conducting such tests or inspections he or she deems necessary to be assured of the vessel's seaworthiness." 46 C.F.R. § 175.806(b)(iv) (emphasis added); see also 46 C.F.R. § 176.500(b)(ii) (explaining to a vessel owner that if an inspector finds deficiencies, "the marine inspector will conduct an inspection more detailed in scope to ensure the vessel is in satisfactory condition and fit for the service for which it is intended"); id. at 176.500(b)(iv) ("Nothing in this subpart limits the marine inspector from conducting such tests or inspections he or she deems necessary to be assured of the vessel's seaworthiness."). As explained in the Government's Reply, Plaintiffs similarly mischaracterize the testimony of the Coast Guard's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-7065 PA (MRWx) | Date | August 1, 2024 |
|---|---|---|---|
| Title | Nancy Fiedler, et al. v. United States of America | | |

30(b)(6) deponent as confirming that an inspector operates under mandatory obligations when the testimony explains the high level of discretion granted to the inspectors. See Lam, 979 F.3d at 674 ("[I]f the . . . policies allow discretion, then [the reviewing court] should presume that . . . [the] employees acted with discretion.").

      Other courts in similar circumstances have, like this Court, concluded that the Coast Guard's inspection regime and the manner in which the inspections are conducted, satisfy both parts of the Berkovitz test and fall within the discretionary function exception. See Cassens v. St. Louis River Cruise Lines, Inc., 44 F.3d 508, 514-15 (7th Cir. 1995) ("These guidelines evidence the fact that inspectors are required to make choices and exercise judgement [sic] in conducting their inspections. These judgments require balancing considerations of safety and economics with reference to the needs and uses of the particular vessel being inspected. Because they are 'based on considerations of public policy,' they meet the second requirement for the application of the discretionary function exception."); id. at 515 ("[Plaintiff] wrongly concludes that the discretionary function exception does not apply because the inspector's negligent act, the failure to perceive the absence of handrails, does not involve the exercise of judgment. The protected discretion at issue is the discretion to formulate and conduct a specific inspection procedure for a particular ship. The discretionary function exception shields the entire inspection process including alleged negligent omissions. If the discretionary function exception could be pierced by showing negligent acts in implementing the discretionary function, the exception would be no shield at all."); id. ("[T]he question is not whether the Coast Guard had discretion to not notice the missing handrail, but rather whether the inspector was required by statute or regulation to follow a specific course of action when inspecting the ship as a whole. Except for the detailed instructions with respect to lifeboats and the like discussed above, he was not."); see also Smith v. United States Coast Guard, 220 F. Supp. 2d 275, 282 (S.D.N.Y. 2002) ("[T]he Coast Guard inspector's judgment concerning the application of inspection standards based on the intended use of the vessel is the type of policy decision the discretionary function exception is designed to protect.").

      Despite dealing with a different, although similar, inspection regime, the Supreme Court in Varig Airlines instructively concluded that the discretionary function exception applied to claims that the federal regulator's inspector negligently certified an aircraft despite it having a waste receptacle that was not made of fire-resistant materials as required by the applicable regulations:

> The FAA's implementation of a mechanism for compliance review is plainly discretionary activity of the "nature and quality" protected by § 2680(a). When an agency determines the extent to which it will supervise the safety procedures of private individuals, it is exercising

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-7065 PA (MRWx) | Date | August 1, 2024 |
|---|---|---|---|
| Title | Nancy Fiedler, et al. v. United States of America | | |

> discretionary regulatory authority of the most basic kind. Decisions as to the manner of enforcing regulations directly affect the feasibility and practicality of the Government's regulatory program; such decisions require the agency to establish priorities for the accomplishment of its policy objectives by balancing the objectives sought to be obtained against such practical considerations as staffing and funding. Here, the FAA has determined that a program of "spot-checking" manufacturers' compliance with minimum safety standards best accommodates the goal of air transportation safety and the reality of finite agency resources. Judicial intervention in such decisionmaking through private tort suits would require the courts to "second-guess" the political, social, and economic judgments of an agency exercising its regulatory function. It was precisely this sort of judicial intervention in policymaking that the discretionary function exception was designed to prevent.

Varig Airlines, 467 U.S. at 819-20, 104 S. Ct. at 2767-68, 81 L. Ed. 2d 660.

For these reasons, and those contained in the Government's Motion and Reply, the Court concludes that the Plaintiffs' claims against the Coast Guard fall within the discretionary function exception. The Government therefore has not waived its sovereign immunity to the claims asserted by Plaintiffs in this action and, accordingly, the Court lacks subject matter jurisdiction over Plaintiffs' claims.

## **Conclusion**

For all of the foregoing reasons, the Court grants the Government's Motion to Dismiss and dismisses this action for lack of subject matter jurisdiction. The parties resolved the dispute concerning the Government's Motion to Strike (Docket No. 107) and the Court has not relied on any of the evidence the Government sought to strike. The Court therefore denies that Motion as moot. The Court will issue a Judgment consistent with this Order.

IT IS SO ORDERED.